# Exhibit 2

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** made as of February 6, 2024, (the "**Agreement**") by and among Adam Tracy, ("**Debtor**"), and L2 Digital, LLC, a Wyoming limited liability company ("**Secured Party**").

A.  Secured Party has extended to Debtor a credit facility in the aggregate principal amount of One Hundred Twenty-Five Thousand and 00/100 ($125,000/00) Dollars (the "**Loan**"), evidenced by certain promissory note delivered contemporaneously herewith made by Debtor to the order of Secured Party (individually and collectively, "**Note**"). This Agreement and the Note, together with any and all other documents delivered in connection with the Loan, are collectively referred to as the "**Loan Documents**" hereunder. The Loan, together with each obligation and liability of Debtor to Secured Party, howsoever created, arising or evidenced, and howsoever owned, held or acquired, whether now or hereafter existing, direct or indirect, contingent or otherwise, including all such obligations and liabilities of Debtor incurred pursuant to the Loan Documents, collectively "**Debtor's Obligations.**"

B  Secured Party requires certain security for the repayment of Debtor's Obligations in accordance with this Agreement.

NOW THEREFORE, in consideration for the foregoing recitals, the Loan and the mutual promises herein, the receipt and sufficiency of which are hereby acknowledged, Debtor hereby covenants and agrees for the benefit of Secured Party as follows:

1.  **Recitals; Definitions.** The parties hereby adopt the recitals set forth above and incorporate them into this Agreement as though fully set forth herein. Capitalized terms not otherwise defined in this Agreement shall have the same meaning herein as provided in the Uniform Commercial Code from time to time in effect in the state of Illinois. The following terms when used in this Agreement will have the meanings set forth below:

"**Collateral**" means the property pledged in Section 2 of this Agreement.

"**Event of Default**" means: (i) the occurrence of a default under the Loan Documents, including without limitation this Agreement, the Note and Guaranty; (ii) the occurrence of any loss, theft, destruction or other harm to the Collateral; (iii) the attachment, encumbrance, seizure or forfeiture of any of the Collateral; (iv) any proceeding against the Debtor under any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute of any federal or state government, or any assignment for the benefit of creditors, (v) Debtor's failure to promptly satisfy Debtor's Obligations, or (vi) the Debtor's dissolution or termination.

2.  **Grant of Security Interest.** As security for the prompt payment of the Debtor's Obligations. Debtor does hereby pledge, assign, transfer and deliver to Secured Party and does hereby grant to Secured Party a continuing and unconditional first lien security interest in and to all present and future assets, whether tangible or intangible, owned or acquired by the Debtor, wherever located, including but not limited to, real property, personal property, accounts, inventory, equipment, securities, and all proceeds thereof.

3.  **Rights in Collateral.** Debtor will continue to be entitled to all of the benefits and to exercise all of the rights of ownership of the Collateral (except as otherwise agreed between the

parties), but only so long as an Event of Default has not occurred and Secured Party has not exercised any of the rights under this Agreement or otherwise available at law or in equity with respect to the Collateral.

4. **Protection of Collateral.** Debtor will take such necessary steps to preserve all rights of Secured Party in the Collateral against third parties. Debtor hereby authorizes Secured Party to file such financing statements necessary to perfect the security interests granted under this Agreement. Debtor will, at the Secured party's request, from time to time, execute and deliver to Secured Party such other documents and information and do such acts as Secured Party deems necessary to protect its interests under this Agreement.

5. **Remedies upon Default.** Upon the occurrence of an Event of Default:

(a) Debtor's Obligations may, at the option of Secured Party, and without demand, notice or legal process of any kind, be declared and immediately will become due and payable, and Secured Party may exercise, from time to time, any rights and remedies available against Debtor under applicable law in addition to any rights and remedies expressly granted in this Agreement or in any other agreements with Secured Party.

(b) Without notice, demand or legal process of any kind, Secured Party may take possession of any or all of the Collateral, wherever it may be found, and for that purpose may pursue the same wherever it may be found, and further:

(i) instruct Debtor, at its expense, to notify any parties obligated on any of the Collateral, including any and all account debtors, to make payment directly to Secured Party of any amounts due or to become due thereunder, or Secured Party may directly notify such obligors of its security interest, and/or of the assignment to Secured Party of the Collateral and direct such obligors to make payment to Secured Party of any amounts due or to become due with respect thereto, and thereafter, collect such amounts due on the Collateral directly from such obligors;

(ii) enforce collection of any of the Collateral, including any Accounts, by suit or otherwise, or make any compromise or settlement with respect to any of the Collateral, or surrender or release or compromise, extend or renew for any period any indebtedness thereunder; and/or

(iii) take possession or control of any proceeds and products of any of the Collateral, including the proceeds of insurance thereon.

(c) Upon the occurrence of an Event of Default, Debtor hereby irrevocably constitutes and appoints the Secured Party and any agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Debtor and in the name of the Debtor or in its own name, from time to time in the Secured Party's reasonable discretion, for the purpose of enforcing the Secured Party's rights under this Agreement, to take any and all appropriate action by any technologically available means, which may include, without limitation, any form of electronic data transmission, and to execute in any appropriate manner, which may include, without limitation, using any symbol that the Secured Party may adopt to signify the Debtor's intent to authenticate, any and all documents and instruments which may be reasonably necessary or desirable to enforce Secured Party's rights

2

under this Agreement and to receive and collect all instruments made payable to the Debtor representing any payments in respect of the Collateral or any part thereof and to give full discharge for the same. The Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as and when the Secured Party may determine. To facilitate collection, the Secured Party may notify account debtors and obligors on any Collateral to make payments directly to the Secured Party. If the Debtor fails to perform any agreement contained herein, the Secured Party, at Secured Party's option, may itself perform, or cause performance of, such agreement, and the expenses of the Secured Party incurred in connection therewith shall be included in the Debtor's Obligations secured hereby and payable by the Debtor under this Agreement. The Debtor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

6. **Collection Expenses.** Debtor will reimburse Secured Party for all legal fees and other costs and expenses incurred in collecting or enforcing the Loan Documents and this Agreement and protecting or foreclosing on the Collateral.

7. **Modification.** This Agreement may not be amended, modified or otherwise changed except by a written instrument duly executed by Debtor and Secured Party.

8. **Covenants, Representations and Warranties.** Debtor hereby covenants with and represents and warrants to Secured Party that as of the date of this Agreement and during such period as Debtor's Obligations remain outstanding:

(a) Debtor will: (i) maintain the Collateral, and not permit its value to be impaired; (ii) not permit waste or removal of the Collateral; (iii) keep the Collateral free from all liens, executions, attachments, claims, encumbrances and security interests (other than those of Secured Party and permitted in writing by Secured Party); (iv) not lease, sell or transfer the Collateral or any interest in the Collateral to any party; and (v) not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

(b) Debtor will not, either directly or indirectly, merge, consolidate, sell, transfer, license, encumber or otherwise dispose of all or any part of Debtor's property or business or all or any substantial part of Debtor's assets.

(c) Debtor will not borrow additional funds secured by the Collateral without Secured Party's prior written consent.

(d) Upon request, Secured Party may examine the Collateral. Debtor will promptly notify Secured Party in writing of any material change in the condition of the Collateral.

9. **Further Assurances.** Debtor will promptly execute and deliver all further instruments and documents and perform all further actions as may be reasonably requested by Secured Party in connection with this Agreement.

10. **Waiver.** Debtor hereby waives presentment, protest, demand and, except as required by law, notice of every kind.

11. **Governing Law, Jurisdiction, Jury Waiver**. This Agreement will be construed, enforced and otherwise governed by the laws of the State of Illinois, without regard to its conflict of law principles. THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY UNITED STATES FEDERAL OR ILLINOIS STATE COURT SITTING IN COOK COUNTY, ILLINOIS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENTS AND HEREBY IRREVOCABLY AGREE THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT AND WAIVE ANY OBJECTION ANY OF THEM MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM. THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH ANY LOAN DOCUMENT.

12. **Notices**. All notices and other communications required or which may be given hereunder shall be in writing and shall be deemed effectively given or received for all purposes only (i) when presented personally, (ii) on receipt when mailed by U.S. first class mail, registered or certified, postage prepaid, return receipt requested, (iii) one day after being sent if sent by professional overnight courier or messenger service, or (iv) on the date of transmission if sent by telecopy or other means of electronic transmission, with receipt confirmed by answer back or otherwise, at the address indicated on the signature page to this Agreement (or addressed as any party may subsequently designate by notice in accordance with this Section).

13. **Insurance.** Debtors shall maintain or cause to be maintained at its own expense insurance to such extent and covering such risks as is usual and customary and satisfactory to Secured Party, including, without limitation, insurance against Debtor's public and professional liability risks; and will designate Secured Party as loss payee on any casualty policies and take such other action as Secured Party may reasonably request to ensure that Secured Party will receive (subject to the Secured Party's interests) the insurance proceeds of the Collateral. contemporaneous with the execution of this Agreement, Debtor shall provide to Secured Party a copy of such insurance policy, in effect as of the date of this Agreement, and shall provide to Secured Party copies of all documents evidencing the annual renewal of such insurance policy or a copy of any substitute insurance policy. Debtor hereby assigns all insurance proceeds to and irrevocably directs, while any of Debtor's Obligations remain unpaid, any insurer to pay to Secured Party the proceeds of all such insurance and any premium refund; and authorizes Secured Party to endorse Debtor's name to effect the same, to make, adjust or settle, in the Debtor's name, any claim on any insurance policy relating to the Collateral; and, at the option of Secured Party, to apply such proceeds and refunds to Debtor's Obligations or to restoration of the Collateral, returning any excess to Debtor.

14. **Severability; Presumption**. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision, which will remain in full force and effect. No provision of this Agreement will be construed against any party due to the fact that such provision or any portion thereof was drafted by such party.

15. **Assignment; Binding Effect.** This Agreement may not be assigned except upon written consent executed by each of the parties, provided however, that this Agreement may be

assigned by Secured Party to a subsequent holder of the Note. This Agreement will inure to the benefit of, and be binding upon, the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**FOR THE DEBTOR:**

By: _____
Adam Tracy

**FOR THE SECURED PARTY:**

By: _____
Brian Nelson
Its: Managing Member

5